1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARC BOWMAN,

11             Plaintiff,                    No. CIV S- 04-0986 DFL CMK

12        vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15             Defendant.                    FINDINGS & RECOMMENDATIONS
     _____/
16

17             Plaintiff, Marc Bowman, brings this action pursuant to 42 U.S.C. § 405(g),

18   seeking judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying his application for disability insurance benefits (" DIB") under the

20   provisions of Title II of the Social Security Act.[1]   The parties have filed cross motions for

21   summary judgment.  For the reasons discussed below, the court recommends plaintiff's motion

22   for summary judgment or remand be denied and the Commissioner's cross motion for summary

23   judgment be granted.

24   /////

25   /////

26
     _____
          [1]On May 19, 2004, this action was transferred intradistrict from the Fresno division
     pursuant to Local Rule 3-120(b).

I. Background

Plaintiff filed an application for DIB on September 7, 2000, alleging an inability to work since February 1998 due to a disabling condition, which involved among other things, fatigue, pain, headaches, eye pain, dizziness and mental disorders. (Tr. 97-98, 131.)  Plaintiff's application was denied initially and upon reconsideration.  A hearing was held before an administrative law judge ("ALJ") on May 14, 2002.   (Tr. 18-59.)  Plaintiff was advised of his right to representation and waived it, choosing to proceed pro se.  (Tr. 20-25.)  At the hearing, both plaintiff and his mother testified. (Tr. 18-59.)

At the hearing, plaintiff testified that he was born on October 9, 1960 and had a high school education.  (Tr. 42.)  His employment history includes working in real estate sales and working as a logger.  (Tr. 42-43.)  Plaintiff stated that he had his own logging business and also had experience in being a heavy equipment operator.  (Tr. 43-44.)  After 1987, besides logging and operating heavy machinery, the only work plaintiff engaged in was his real estate investments.  (Tr. 44-45.)  Plaintiff stated that he had real estate investments, which consisted of buying and developing land with equipment.  (Tr. 45.)  Plaintiff stated that he harvested timber on his own real estate and other people's properties.  (Tr. 45.)   Since his illness began, plaintiff has been supporting himself by selling real estate for less than value through sales arranged by his mother.  (Tr. 45.)

Plaintiff testified that, on February 15, 1998, he became ill with what he believed was the flu because he had a fever, was coughing large amounts of mucus, and had other flu-like symptoms.  (Tr. 45-46.)  In April of 1998, plaintiff went to the Century Wellness Center in Reno, Nevada and was seen by Dr. Kerr.  (Tr. 46. )  Plaintiff states that he has misplaced his records from Dr. Kerr.  (Tr. 46.)

Plaintiff testified that since 1998, he has had periods of some improvement.  (Tr. 45.)  Plaintiff stated that "there has always been something plagu[ing] him  and that, since 1998, he has never felt better than a 'five' on a scale of one to ten."  (Tr. 45.)  Plaintiff stated that, on

2

1 average, he felt like a two.  (Tr. 47.)  Plaintiff described symptoms, beginning in August or

2 September 1998, of being increasingly weak and growing congestion in his lungs.  (Tr. 48. ) He

3 experienced weight loss, unbelievable fatigue, diarrhea or constipation, pain, extreme pain and

4 "fibromyalgic" type symptoms.  (Tr. 48.)  Sometime between August 1998 and October 1998,

5 and perhaps prior to a week-long visit to Sutter Center for Psychiatry, plaintiff experienced night

6 sweats, chills, extreme fear, essentially a [p]anic disorder that escalated into panic attacks about

7 three times."  (Tr. 51.)  At that time, plaintiff stated that he was at a very low point and that the

8 doctor told him that his "mind did something to [his] body, and shut the capillaries off and [he]

9 lost feeling and circulation in [his] extremities."  (Tr. 51.)  That episode lasted for about three

10 weeks and culminated in plaintiff going to the hospital.  (Tr. 52.)  At the hospital, plaintiff was

11 given a pill, which helped considerably, but his fatigue and pain were still severe.  (Tr. 52.)

12 Plaintiff reported that his constant head and eye aches were helped tremendously and ceased to a

13 certain extent after he underwent sinus surgery in March 2002.  (Tr. 48-50, 52.)  Plaintiff stated

14 that, since his sinus surgery, he feels better and has more energy.

15      From 1998 until plaintiff had his sinus surgery in 2002, his daily activities

16 included spending a lot of time seeing health care professionals and trying many different

17 therapies.  (Tr. 53.)  During the day, he sometimes sat outside in the sun or the shade.  (Tr. 53.)

18 Plaintiff walked sometimes and had massage therapy.  (Tr. 53.)  He testified that he also watched

19 lots of television, and, if he felt better, he took rides in his pickup truck. (Tr. 53.)  Plaintiff stated

20 he would drive to a property which he owned to watch the ducks.  (Tr. 53.)  He also played cards

21 and played blackjack with himself.  During this period, plaintiff lived  with his mother.  (Tr. 53.)

22 Plaintiff testified that his mother took care of him; doing all the household chores and shopping.

23 (Tr. 53.)

24 ///

25 ///

26 ///

1    Plaintiff's mother, Georgia Bowman, testified at the hearing that plaintiff had a

2 good reputation and was an excellent real estate salesman and very skilled at running heavy

3 equipment. (Tr. 55.) Ms. Bowman stated that plaintiff's illness had put them in a financial bind

4 and that, as a result, she was selling her house. (Tr. 55.)

5    The record does not contain any treating physician source opinions nor any

6 relevant consultative examining source opinions. (Tr. 4-5.) [2] Four state agency reviewing

7 physicians, Marshall Gollub, M.D., Francy Mateus, M.D., David Pong, M.D., and Irwin Lyons,

8 M.D., opined that the medical evidence of record was insufficient to diagnose any impairment

9 prior to December 31, 1999, plaintiff's last insured date. (Tr. 60-61, 252, 270.)

10    In a decision dated August 28, 2002, the ALJ found that plaintiff was not

11 disabled. The basis for the ALJ's decision was his finding that there was insufficient evidence to

12 establish that plaintiff had any impairments or combination of impairments that limited his

13 ability to work on or prior to December 31, 1999. (Tr. 16-17.) The ALJ's decision became the

14 final decision of the Commissioner when the Appeals Council denied plaintiff's request for

15 review on March 18, 2003. (Tr. 6.) Plaintiff filed a timely appeal on May 6, 2003.

16 II.  Standard of Review

17    This court's review is limited to whether the Commissioner's decision to deny

18 benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported

19 by substantial evidence on the record as a whole. See Copeland v. Bowen, 861 F.2d 536, 538

20 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573,

21 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but

22

23    [2]The record does contain a 2001 consultative internal medicine examining opinion (Tr. 443-448) and a 2001 consultative psychiatric examining opinion (Tr. 438-442.) However, those

24 opinions are not relevant because neither assess plaintiff's alleged limitations or impairments for the period at issue—between plaintiff's onset date of disability, February 15, 1998, and the date

25 he was last insured, December 31, 1999. To be entitled to disability insurance benefits, plaintiff must establish that he became disabled on or before December 31, 1999. See Tidwell v. Apfel,

26 161 F.3d 599, 601 (9th Cir. 1999) (stating that Title II claimant must establish disability by date last insured).

1    less than a preponderance, <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996) (citing <u>Sorensen v.</u>

2    <u>Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such evidence as a reasonable

3    mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389,

4    402, 91 S. Ct. 1420 (1971) (quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229, 59

5    S. Ct. 206 (1938)).  The court must consider both evidence that supports and evidence that

6    detracts from the Commissioner's decision, but the denial of benefits shall not be overturned

7    even if there is enough evidence in the record to support a contrary decision.  <u>See Jones v.</u>

8    <u>Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  If substantial evidence supports the administrative

9    findings, or if there is conflicting evidence supporting a finding of either disability or

10   nondisability, the finding of the ALJ is conclusive, <u>see Sprague v. Bowen</u>, 812 F.2d 1226, 1229-

11   30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

12   weighing the evidence. <u>See Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

13   III.  <u>Discussion</u>

14          As an initial matter, the undersigned notes that plaintiff has presented additional

15   evidence outside the administrative record.  He submitted several letters from friends with his

16   November 16, 2004 motion for summary judgment and presented supplemental evidence on May

17   2, 2005.  The supplemental evidence presented on May 2, 2005 consists of two declarations,

18   which describe plaintiff's ill health and consumption of medicine.   The Commissioner has

19   objected to both of plaintiff's offers of evidence outside the administrative record.

20          Pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), the

21   record in a DIB review is limited to the copy of the certified transcript of the administrative

22   record that is filed with the defendant's answer and to additional evidence that is new and

23   material.  In order for additional evidence to be new and material, there must be a reasonable

24   probability that the additional evidence would have changed the ALJ's decision.  <u>See Booz v.</u>

25   <u>Sec. of HHS</u>, 734 F.2d 1378, 1380-81 (9th Cir. 1984).  There is not a reasonable probability that

26   ///

1   plaintiff's additional evidence would have changed the ALJ's decision.  Accordingly, the

2   undersigned declines to consider plaintiff's additional evidence and limits his review solely to

3   the certified administrative transcript.

4          Plaintiff contends that "he was NOT provided in this case with 'sympathetic

5   assistance' by either the Social Security Administration or the Administrative Law Judge..."

6   (Pl.'s Mot. Summ. J. (doc. 32) at ¶ 5 (emphasis in original.))   In support of his contention,

7   plaintiff states that, when a claimant proceeds pro se, the Social Security Administration and the

8   ALJ owe him a heightened duty to fully develop the record and provide sympathetic assistance.

9          In Social Security cases, the ALJ has a special duty to fully and fairly develop the

10   record to assure that the claimant's interests are protected.  See Brown v. Heckler, 713 F.2d 441,

11   443 (9th Cir. 1983).  When a claimant appears pro se, the ALJ must "scrupulously and

12   conscientiously probe into, inquire of, and explore all the relevant facts."  Key v. Heckler, 754

13   F.2d 1545, 1551 (9th Cir. 1985). The absence of counsel does not "affect the validity of the

14   hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness

15   in the administrative proceedings."  Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981.)  The ALJ

16   can fulfill his or her duty to the pro se claimant by making a reasonable effort to obtain medical

17   evidence from the claimant's treating sources, or by ordering a consultative examination when

18   the medical evidence is incomplete or unclear.  See 42 U.S.C. § 423(d)(5)(A).

19          Here, the ALJ fulfilled his obligation to develop the record.  The ALJ questioned

20   plaintiff's decision to proceed without an attorney, and he explained options that plaintiff had for

21   obtaining an attorney at no cost. (Tr. 20-24.)  Upon questioning, plaintiff stated that he wanted to

22   proceed representing himself. (Tr. 24.)  Throughout the hearing, the ALJ inquired of plaintiff in

23   a neutral manner.  The ALJ also spent significant time going over medical records with plaintiff

24   to find out what plaintiff had brought to the hearing.  The ALJ advised plaintiff to send in other

25   medical records. (Tr. 29-35.).  The ALJ offered to have his office request the records, but

26   plaintiff opted to provide the records himself.  (Tr. 36.)   The record reveals that various medical

1   records were provided, although none were from a treating physician and that there are records

2   of two relevant state agency consultative examinations.  (Tr. 199-257.)  The ALJ also gave

3   plaintiff several opportunities to further develop answers and repeatedly had to remind plaintiff

4   to describe the problems plaintiff was having instead of what plaintiff believed to be his

5   diagnosis to be.  (Tr. 51.)  Based on this, the undersigned finds that the ALJ fulfilled his duty to

6   develop the record.

7           Next, plaintiff argues that there was an "improper assessment of the medical

8   records."  (Pl.'s Mot. Summ. J. (doc. 32) at ¶ 6.)  Although plaintiff cites the standard for

9   weighing competing medical source opinions, plaintiff fails to identify any instance in which the

10  ALJ improperly assessed the medical evidence of record.  The record instead reveals that the

11  ALJ noted that the only relevant medical opinion in the record was the assessment of a state

12  agency physician who concluded that there was insufficient evidence to establish a diagnosis on

13  or prior to December 31, 1999.  (Tr. 16, 257-270.)  As there was only one relevant medical

14  opinion in the record,[3] the ALJ could not have improperly weighed competing opinions.

15  Accordingly, the undersigned finds that the ALJ did not err in assessing the medical evidence.

16          Next, plaintiff contends that "[m]edical evidence, especially uncontradicted

17  evidence, must be viewed by the Secretary in the light most favorable to claimant."  (Pl.'s Mot.

18  Summ. J. (doc. 32) at ¶ 7.)  Plaintiff cites several cases, all but one from other jurisdictions, to

19  support his contention.  The Ninth Circuit case cited by plaintiff, Hammock v. Bowen, 867 F.2d

20  1209 (9th Cir. 1989) was amended and superceded by Hammock v. Bowen, 879 F.2d 498 (9th

21  Cir. 1989), and it does not support plaintiff's proposition.  A review of the cases cited by

22  plaintiff reveals that plaintiff most likely has misconstrued the standard which states that the

23  opinion of a treating physician may be disregarded only for clear and convincing evidence.

24

25          [3]Much of the medial evidence provided by plaintiff consists of lists of physicians, lists of
    prescriptions, lists of alternative medical providers, or pictures of plaintiff's various medications,
26  but it does not contain any diagnoses or physician's reports.  (Tr. 213-214, 219, 224.)

1   Additionally, a review of the record does not reveal that plaintiff has introduced uncontradicted

2   evidence of a physician's opinion of any disability or limitation for the relevant period between

3   1998 and December 31, 1999, which is the date that plaintiff was last insured.    As plaintiff has

4   not submitted a relevant opinion from a treating physician, the undersigned rejects plaintiff's

5   third claim of error.

6          Plaintiff's final claim is that he was diagnosed with Chronic Fatigue Syndrome

7   which is a medically determinable impairment that can be the basis for a finding of disability.

8   (Pl.'s Mot. Summ. J. (doc. 32) at ¶ 8.)  Plaintiff bears the burden of proof at the second step of

9   the five-step sequential evaluation to establish that any alleged impairments, alone or in

10  combination, are severe.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987); 20 C.F.R. §§

11  404.1512(c), 404.1521(a) (2004).  An impairment is severe only if it significantly limits a

12  claimant's physical or mental abilities to perform basic work activities.  See 20 C.F.R. §§

13  404.1512(c), 404.1521(a) (2004).  "An impairment must be established by medical evidence

14  consisting of signs, symptoms, and laboratory findings, not only by your statement of

15  symptoms." See 20 C.F.R. § 404.1508 (2004).

16         Although plaintiff has provided several medical records, none of these records

17  contains a medical opinion which establishes that plaintiff had any severe impairment, including

18  Chronic Fatigue Syndrome, prior to December 31, 1999, his last insured date.  (Tr. 242-572.)

19  The only relevant medical opinion in the record concludes that there was insufficient evidence to

20  establish any severe impairment prior to December 31, 1999.  (Tr. 16.)  Additionally, the ALJ

21  specifically reviewed plaintiff's records for the period at issue with respect to Chronic Fatigue

22  Syndrome, and he found that the opinion of the state agency physician was consistent with the

23  weight of the relevant medical evidence.  (Tr. 14-16.)   The lack of medical records constitutes

24  substantial evidence which supports the ALJ's finding that plaintiff did not have a severe

25  ///

26  ///

1  limitation prior to his date last insured.  See Magallanes, 881 F.2d at 750.   Accordingly, the

2  undersigned finds that plaintiff has not established that he had a severe impairment prior to his

3  date last insured.

4              IV.  Conclusion

5          The undersigned finds that the ALJ's decision to deny plaintiff DIB benefits is

6  supported by substantial evidence in the record and is based on proper legal standards.

7  See Magallanes, 881 F.2d at 750.  The ALJ's findings are rational and reasonable interpretations

8  of the record.  See Andrews, 53 F.3d at 1041.  The ALJ properly evaluated the medical records

9  in evidence.  However, those records failed to establish that plaintiff had any severe impairment

10  prior to his date last insured of December 31, 1999.

11          Accordingly, IT IS RECOMMENDED that:

12          1.  Plaintiff's motion for summary judgment or remand be denied, and

13          2.  The Commissioner's cross motion for summary judgment be granted.

14          These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

16  fifteen days after being served with these findings and recommendations, any party may file

17  written objections with the court and serve a copy on all parties.  Such a document should be

18  captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

19  objections shall be served and filed within ten days after service of the objections.  The parties

20  are advised that failure to file objections within the specified time may waive the right to appeal

21  the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22

23  DATED:   September 8, 2005.

24

25                      _Craig M. Kellison_____
                    **CRAIG M. KELLISON**

26                      UNITED STATES MAGISTRATE JUDGE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26